ANTHONY R. GALLAGHER
Attorney at Law
3501 12th Avenue South
Great Falls, MT 59405
anthonygallagherlaw@aol.com
Phone: (406) 799-2165
            Attorney for Defendant


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-13-15-BU-SEH |
| Plaintiff, | |
| vs. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSED MOTION TO REDUCE SENTENCE PURSUANT TO 18 USC §3582(c)(1)(A)(i)** |
| DACOTA ROBERT ROGERS, | |
| Defendant. | |

# I. Introduction

## A.    The First Step Act Authorizes Reduction in Term of Imprisonment

This Court has discretion to reduce a term of imprisonment imposed in a case based on 18 USC §3582(c)(1)(A)(i). The Court "may reduce the term of imprisonment . . . after consideration [of] the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction[.]"

1

The First Step Act (FSA), enacted on December 21, 2018, "significantly altered the landscape of compassionate-release motions." *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (quoting *United States v. Rodriguez*, 451 F.Supp.3d 392, 398 (E.D. Penn. 2020)). Congress's goal in revamping § 3582(c)(1)(A) was to "creat[e] an avenue for defendants to seek relief directly from the courts," thereby retaining sentencing power in the judiciary where it belongs. *McCoy*, 981 F.3d at 276 (4th Cir. 2020).

No longer are compassionate release motions tied only to elderly inmates or those with chronic health conditions as set forth in U.S. Sentencing Guideline Manual § 1B1.13. District courts are "empowered" to "consider any extraordinary and compelling reason for release that an inmate might give." *Id.* at 284 (quotation citation omitted). In *United States v. Lapp*, this Court said it "will look to additional considerations outside those listed in the Policy Statement to determine whether extraordinary and compelling circumstances compel a reduction in [the Defendant's] sentence." See Order, p. 5, Doc. 62, granting in part and

denying in part Lapp's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) in Cause No. CR 10-09-H-BMM (D. Mont. Aug. 3, 2022).

The Ninth Circuit in *United States v. Aruda* held that there is no policy statement that applies to defendant-filed § 3582(c)(1)(A)(i) motions. See *Aruda*, 993 F.3d 797, 797, 802 (9th Cir. 2021). *Aruda* further noted that USSG §1B1.13, which applies only to motions filed by the BOP Director, "may inform a district court's discretion" in ruling on a defendant's motion, "but," it is "not binding." *Id.* Such remarks indicate that resort to § 1B1.13 to limit judicial discretion in any way, or otherwise to refuse to consider any reason a defendant advances in support of his motion, constitutes an abuse of discretion. See also *United States v. Lapp*, supra, Doc. 62 in Cause No. CR 10-09-H-BMM at pp. 4-5.

Note too, *Aruda's* "may" is permissive not prescriptive. District courts have discretion to reject, rather than embrace, § 1B1.13 and its commentary. Cf. *Kimbrough v. United States*, 552 U.S. 85, 109–110 (2007) (recognizing discretion to disagree with a guideline and to reject it). See also *United States v. Rosales-Gonzales*, 801 F.3d 1177, 1182 (9th Cir. 2015); *United States v. Henderson*, 649 F.3d 955, 964 (9th Cir. 2011).

The Second Circuit has explained, "compassionate release is a misnomer because [the First Step Act] in fact speaks of sentence reduction. A district court could, for instance, *reduce but not eliminate a defendant's prison sentence . . .*" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (emphasis added). See also *United States v. Vargas*, 502 F.Supp.3d 820, 827 (S.D.N.Y. 2020) (finding that "[i]n the wake of *Brooker*, there can be no doubt that the Court is entitled to consider the severity of [the defendant's] sentence in weighing his motion for compassionate release").

Part III.A. further details "extraordinary and compelling reasons" for sentence reduction. Part IV shows §3553(a) factors favor release now.

## B.   Exhaustion

As required by 18 USC §3582(c)(1)(A), a defendant must exhaust administrative remedies with the Bureau of Prisons (BOP) or wait thirty (30) days after submitting a request for compassionate release to the warden, whichever comes first.  See 18 USC §3582(c)(1)(A) (2020 rev. ed.). Mr. Rogers has met that requirement.

Two release requests for compassionate release were submitted to

the warden of FCI Victorville II. The first was very brief. Mr. Rogers does not have a copy of the first request, submitted electronically on June 29, 2021, nor does he have a way to retrieve it. Frankly, it did little more than mention Compassionate Release and First Step Act provisions, that is he asked to be considered for release pursuant to § 3582(c)(A). There was no further detail offered at that time. That cursory request was denied on July 11 (Exhibit A).

The second was a more comprehensive submission on August 16, 2021, which included detailed reasons and proposed a release plan. That request was denied by the warden on March 16, 2022. (Exhibit B).

This motion conforms with 18 USC §3582(c)(1)(A) since it was made more than thirty (30) days after the second request.

## II. Background

## A. Facts

The presentence investigation report says that on December 8, 2012, Mark Phillip Allen was found unresponsive in his residence. He was transported to St. James Hospital, but medical personnel were unable to revive him. Investigation revealed Mr. Allen had been smoking fentanyl

from a patch. When later interviewed by law enforcement, Mr. Rogers said he sold a fentanyl patch to Mr. Allen the day before for $35. A post mortem examination ruled Mr. Allen's death accidental. See PSR ¶¶ 8 through 12.

## B. Procedural History

On July 18, 2013, a federal grand jury handed down a two-count Indictment charging Mr. Rogers with Distribution of Fentanyl, in violation of 21 USC §841(a)(1) (Count I), and Distribution of Fentanyl Resulting in Death, in violation of 21 USC §§841(a)(1), (b)(1)(c) (Count II).

Mr. Rogers entered into a formal resolution of the matter with the United States whereby he agreed to plead guilty to the distribution charge (Count I), which carried a maximum 20-year sentence. In exchange, the government agreed to dismiss Count II, a separate charge of distribution of fentanyl resulting in death pursuant to 21 U.S.C. §§ 84l(a) and 84l(b)(l)(c), which called for a mandatory minimum 20-year prison term to a maximum of life. The United States also agreed not to file an information under 21 U.S.C. § 851 based on a prior drug conviction. The written settlement did not contain an agreed-upon sentence range, but

included a waiver of appeal of any sentence imposed. Doc. 15.

On September 16, 2013, Mr. Rogers pled guilty to Count I of the Indictment under a Rule 11(c)(1)(A) and (B) plea agreement. He was remanded to custody that day. See Doc. 18. On February 24, 2014, he was sentenced on Count I to 224 months (approximately 18½ years) imprisonment, followed by three (3) years of supervised release. Doc. 26 and 27. Mr. Rogers appealed that sentence, but because the Ninth Circuit Court of Appeals concluded the appeal waiver in the plea agreement was enforceable, the appeal was dismissed for lack of jurisdiction. See Unpublished Opinion, No. 14-30031 (reprinted in 588 Fed. Appx. 333). A motion for reconsideration was summarily denied. See Doc. 40, 41, 42. A petition for Writ of Certiorari (Supreme Court No. 15-6302) was denied November 9, 2015. Doc. 43 and 44.

## III. Argument

### A.   Extraordinary and Compelling Reasons for Sentence Reduction

Extraordinary and compelling reasons to modify the sentence are: the unusually long custodial term; relative youth at the time of the offense; the need to assist aged and infirm grandparents; exemplary

rehabilitation; health and safety; and, perhaps paramount, an unique justification.

### 1.   The term of imprisonment is excessive

Changes in the legal and factual landscape lead to the conclusion that Mr. Roger's 224-month sentence (approximately 18½ years imprisonment) is excessive and unjust. On January 27, 2014, the Supreme Court rendered its decision in *Burrage v. United States*, 571 U.S. 204 (2014), which held that a defendant cannot be liable under the death or serious bodily injury provision of the Controlled Substance Act unless use of the distributed substance is the but-for cause of death or injury. *Burrage* increased the burden of proof required for the government to prove the crime of distribution resulting in death.[1] Then the FSA heightened the requirement for enhancing a drug sentence.

---

[1] The Government's Offer of Proof (Doc. 16), filed September 16, 2013, did not include a causation element, nor do the facts acknowledged by Mr. Rogers explicitly indicate that the distribution was the 'but-for' cause of death. Citing *Burrage*, the defense sentencing memorandum noted Mr. Rogers "neither admitted nor did the Court find that defendant's distribution of fentanyl was the 'but for' cause of another's death." See pages 2-3, Doc. 22.

The changes mean Dacota Rogers would no longer face a mandatory life sentence nor would he confront the potential of a mandatory minimum sentence of twenty (20) years as alleged in the second count of the indictment (Doc. 1). In that regard, Mr. Rogers' case resembles *United States v. Morefield*, No. 2:13-CR-02113-SAB-1 (E.D. Wa. April 19, 2021). Mr. Morefield was charged on September 10, 2013, with four counts of Distribution of Heroin and, together with his co-defendants, one count of Distribution of Heroin Resulting in Death. After *Burrage* was decided, on February 17, 2015, Levi Morefield entered into a plea agreement with the United States. He agreed to plead guilty to one count of Distribution of Heroin in exchange for an agreed guideline range. He ultimately received a 180-month term of imprisonment, about the middle of then-applicable advisory range. *Morefield* Order, pp. 3-5.

Mr. Morefield filed a Motion to Reduce on March 5, 2021. On April 19, 2021, the court granted release because, among other things, if sentenced now he would face an 8-14 month advisory range and "would no longer be facing a mandatory life sentence and would no longer be facing a mandatory 20-year sentence." *Morefield* Order, pp. 7-8. See also *United*

*States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) (the legislative history of the FSA recognized a reduction may be appropriate when "extraordinary and compelling circumstances justify a reduction of an *unusually long* sentence" (emphasis in original)) and *United States v. Shobe*, No. 4:11-cr-00149, ECF No. 376 (N.D. Okla. June 24, 2021) (gross disparity between actual sentence and sentence defendant would receive today).

Where, as here, the defendant's plea agreement spoke solely to the distribution of illegal substances, the only way that the more serious 'resulting in death' guideline should be utilized would be if the accused had stipulated in his plea agreement to the more serious offense. See, *Braxton v. United States*, 500 U.S. 344, 111 S.Ct. 1854 (1991) (under USSG §1B1.2(a) more serious guidelines can be used only where defendant stipulated to commission of more serious offense). To this extent *Burrage* overrules the causation analysis set forth in *United States v. Hicks*, 217 F3d 1038, 1048 (9th Cir. 2000), cited in the government's sentencing memorandum. Doc. 21 at 3. Compare with Doc. 22, p. 3.

Mr. Rogers did not stipulate to the more serious offense. Under

USSG §2D1.l(a) the "offense of conviction" by his guilty plea was distribution of fentanyl as described in the Indictment's first count. It was not distribution of fentanyl resulting in death (Count II). Hence the guidelines range should have been arrived at by applying §2D1.l(a)(5), not §2D1.l(a)(2). A Fifth Circuit opinion has addressed this issue. The guideline for distribution resulting in death only applies when the death is clearly part of the crime of conviction. *United States v. Greenough*, 669 F .3d 567, 575 (5th Cir. 2012); also see, *United States v. Pena*, 742 F.3d 508 (1st Cir. 2014) (defendant can only be held accountable for drug distribution resulting in death when death is confirmed by guilty plea or jury verdict).

As maintained throughout the litigation and noted in his PSR objection (Doc. 35, PSR Addendum, page 1 (sealed)), the correct base offense level is found in §2D1.1(a)(5). It is unclear from review of the law enforcement reports provided in the original discovery disclosure how many patches the victim was sold, by whom, and subsequently consumed by Mr. Allen. "Part" of a fentanyl patch is listed twice in the evidence log, so presumably the victim may have obtained two patches. Typical dosage

for one patch is 25 mcg. Fifty mcg coverts to less than one gram resulting in a base offense level of 12. See generally, Doc. 35 (sealed), PSR Addendum, page 1. See also, Defendant's Sentencing Memorandum, Doc. 22, pp. 2-3.

Today, Mr. Rogers would face no threat of a mandatory life sentence. Combined with a Criminal History Category II (see PSR ¶33), Dacota Rogers' resulting guideline range would be 12 to 18 months, even without accounting for Acceptance of Responsibility for the crime he admitted in the plea agreement and plea colloquy. See Doc. 15, 18 and 29 (change of plea transcript).[2] As in *Morefield, supra,* the Supreme Court's decision in *Burrage* constitutes an extraordinary and compelling reason supporting reduction of sentence. See also *United States v. Perez*, 2020 WL 1180719, at *1, *3 (D.Kan. Mar. 11, 2020) (extraordinary and compelling reasons warrant release in light of the current sentencing scheme).

---

[2] Notably, the post mortem examination ruled Mr. Allen's death to be accidental. See PSR ¶12. This terrible death is more akin to Involuntary Manslaughter, an accidental death caused by negligence or disregard. With a base offense level 18 (USSG §2Al.4(a)(2)(A)) and a Criminal History Category of II, in a 'worst case' scenario, and even without USSG §3El.l(a) and (b) adjustments, the range would be 30-37 months.

2.     **Youth at the time of the offense**

Mr. Rogers was born to Renee and Robert Rogers on November 11, 1992, in Billings, Montana. PSR, page 2 and ¶ 34. When he distributed Fentanyl in early December 2012, Dacota was barely 20 years of age. *United States v. Ramsay*, 538 F.Supp.3d 407 (S.D.N.Y 2021), involved a Defendant who was convicted of murder in aid of racketeering and sentenced to life imprisonment at 18 years old. Ramsay received a then-mandatory life sentence after he shot into a block party on orders to kill a rival gang leader and instead fatally wounded two bystanders (one of whom was pregnant). *Id.,* 538 F.Supp.3d, 411-12. Having served 29 years of that sentence, citing *Jones v. Mississippi*, 593 U.S. –, 141 S.Ct. 1307, 1315 (2021), the Court granted his Motion and reduced his sentence from Life to 30 years (i.e., one more year to serve), finding that youth at the time of the offense, difficult upbringing, and demonstrated rehabilitation were extraordinary and compelling. *Ramsay*, 538 F.Supp.3d 409-10.

*Ramsay* includes a long discussion of psychology and sociology to flesh out why youth is an important consideration in sentencing. An

offender's immaturity, susceptibility, salvageability, and dependency, are valid considerations when determining whether extraordinary and compelling circumstances exist to support a sentence reduction under the First Step Act. *Ramsay*, 538 F.Supp.3d, 415-423. See also *United States v. Davis*, No. 96-CR-912 (ERK), 2020 WL 6746823, at *2 (E.D.N.Y. Nov. 17, 2020) (granting compassionate release and holding that the defendant's sentence "was inordinately lengthy, particularly when taking into account [the defendant]'s youth at the time of his crimes, his relative lack of culpability compared to his co-defendants, and his post-offense rehabilitation"). See also *United States v. Davis*, No. 3:90-cr-85-MOC, 2021 WL 2229293, at *5 (W.D.N.C. June 1, 2021) (finding, in part, that defendant's youth at the time of the offenses, his rehabilitation and strong community support met the extraordinary and compelling standard).

### 3.   Mr. Rogers is needed as a caregiver

Mr. Rogers' grandparents are both 75 years of age. Exhibit E, Affidavit of Richard Garrett. Courts have ruled that an individual's role as potential caregiver is an "extraordinary and compelling reason" for compassionate release. See, e.g., *United States v. Hazelrigg*, No.

CR13-5007-BHS, 2022 WL 374451, at *2 (W.D. Wash. Feb. 8, 2022) ("a defendant being the only available caregiver for their parents can amount to an extraordinary and compelling reason."); *United States v. Tran*, No. CR14-00265-MJP, Dkt. 59 at 5 (W.D. Wash. Nov. 10, 2021) (granting early release from custody so Defendant can live with and be the primary caretaker to his aging and ailing mother); *United States v. Alvarado*, 569 F.Supp.3d 1039 (S.D. Cal. Oct. 29, 2021) (with 50% of sentence served, advanced age and medical condition of both parents constituted extraordinary and compelling reason for early release when coupled with rehabilitation efforts); *United States v. Hernandez*, No. 16-20091-CR, 2020 WL 4343991, at *1 (S.D. Fla. Apr. 3, 2020) (granting compassionate release solely because "Defendant is currently the only potential caregiver for his 84-year-old mother").

### 4. Exemplary Rehabilitation

Rehabilitation alone may not be sufficiently extraordinary and compelling to justify compassionate relief, see 28 U.S.C. § 994(t). However, courts have made clear that it can be considered as part of a compassionate relief motion. See, e.g., *United States v. Brown*, 457

F.Supp.3d 691, 701 (S.D. Iowa Apr. 29, 2020) (finding that individual's "rehabilitation cuts in favor of [compassionate] release"); *United States v. Foreman*, No. 02-CR-135-TCK, 2021 WL 2143819, at *5–6 (N.D. Okla. May 26, 2021) (holding defendant should receive a reduction in sentence based on disparity, rehabilitation and good behavior while incarcerated).

Mr. Rogers has made the most of his custodial time. Attached hereto at Exhibit F are certificates, a diploma, and program records showing that he completed his GED in 2014, then acquired an Associate's degree in 2018. Though enrolled in baccalaureate courses his studies have been somewhat hampered by the pandemic and BOP. His inmate program review shows development, improvement, and self-awareness while maintaining a job.

As noted by Dacota's grandfather,

[w]hile in federal custody the past nine years and two months, to the best of my knowledge, information and belief, Mr. Rogers attended college and earned an associate degree in Science and Math from Coastline Community College and is currently working on his bachelor's degree in business administration at California Coast University. Mr. Rogers has also attended and successfully completed several courses at FCI Victorville II, including drug awareness. Mr. Rogers has written four novels, one of which is self-published. He was employed in Food Service from 2015 to 2022. Dacota has not

16

received an incident report since August 2017.

Exhibit E, Affidavit of Richard Garrett (see also, Exhibit F).

Mr. Rogers realizes that he irreparably damaged the last two years of his mother's life (she died Christmas eve of 2015 during an asthma attack) and made the rest of another mother's life, Gail Allen (Mark Allen's mother), difficult beyond words, all because of the influence of drugs. Those two truths changed Mr. Rogers. He will never use illegal drugs again.

### 5.    Health and Safety

Mr. Rogers' repeated exposure to COVID-19 virus constitutes an extraordinary and compelling reason warranting a sentence reduction. Mr. Rogers suffered a retinal detachment which was surgically repaired early in his custodial term. See Exhibit C, BOP medical records (filed under seal), Bates pages 00037-44, 00054- 55, 00067-70, 0077-78, 00086 (still complaining of blurry vision on left eye, and sees double vision when looking at far distance), 00088-89, 00091, 00097, 00112, 00117-118, and 000125-126. A screen in April 2016 showed his vision was still blurry, though improved after surgery. Exhibit C, page 00099.

Victorville Medium II, or any prison, is a disquietingly unsafe place to be for someone with impaired vision. Additionally, it is common knowledge that COVID-19 exacerbates health and safety risks. During the pandemic, courts have found extraordinary and compelling reasons for relief "when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F.Supp.3d 832, 841 (E.D. Va. 2020) (collecting cases).

As of December 1, 2022, Victorville II had 5 residents who were positive for the virus; 599 inmates and 92 staff recovered; 2 in prison population died. The measures BOP has taken to combat the pandemic renders incarceration more onerous. When the Court sentenced Mr. Rogers in early 2014, it obviously could not foresee the adverse impact COVID-19 would have on the prison environment so many years later. Courts recognize unexpected harshness warrants a sentencing reduction. See, e.g., *United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007) (noting courts may, but are not required to, find "that the harsher the conditions the shorter the sentence should be"). Mr. Rogers does not argue that he is

particularly susceptible nor at a particularized risk of COVID-19 at his facility. But degradation of eyesight presents a danger, the exact parameters of which are unknown. The harsh reality is that the pandemic is not over, and incarcerated individuals face heightened risks with little real opportunity to mitigate them. Accordingly, the pandemic, along with vision issues, should factor into the Court's decision. It weighs in Dacota's favor, though perhaps not alone enough to amount to an extraordinary and compelling reason for a sentence reduction.

### 6.   An unusual circumstance unique to this case

An official Department of Justice web publication entitled "Victim Impact Statements," encourages those negatively affected by a crime to submit a statement to the Court.

> The victim impact statement assists the judge when he or she decides what sentence the defendant should receive. Although the judge will decide the defendant's sentence based primarily on the pre-sentence report and certain sentencing guidelines, the judge should consider your opinion before making a decision.

See https://www.justice.gov/criminal-vns/victim-impact-statements.

Mark Allen's family submitted such a statement for consideration prior to Dacota's sentencing. PSR ¶ 13. After relating the devastating loss

19

caused by Mark's death, the statement concluded:

> We don't harbor hard feelings towards Dakota [sic] Rogers. Mark probably knew him as a friend, and he obviously has made some poor choices in his life. It's unfortunate that $35.00 and a bad choice with a drug that should never have been available changed the course of so many lives. We just hope this doesn't happen to other families. We have never met Dakota [sic] – we hope he is able to do something with his life. He is so young – and it's sad that this decision on his part and our son's has cost so much in every aspect. We do forgive him, and pray for him and his family.

*Id.*

It is telling that the Allen family sees Dacota and Mark as friends. This underscores the atypical exchange of substances here – not the usual motivation commonly driving a drug sale. It also reveals two born and bred Montana kids who unfortunately were not immune to rash judgments of youth not fully appreciating the deadly threat posed by ingesting fentanyl.

Not easily categorized in the pantheon of reasons for a sentence reduction is the fact that Dacota Rogers and Gail Allen have both undeniably taken forgiveness and reconciliation to heart. From the beginning, Dacota endeavored to promote a meaningful relationship with Mark Allen's mother. That effort has manifest a profound change in him.

For her part, Ms. Allen maintained contact with Dacota. She has

> spoken to my other children and my husband, and the
> sentiment each have expressed is that is [sic] doesn't seem
> productive for Dacota to spend more time in prison. He will
> have a tough road to walk when he gets out, but he has gone
> from a child to a man in prison, and if he's allowed to be
> released earlier, perhaps he can make something of his life in
> the outside world.

See Exhibit D, p. 2 (Letter from Gail Allen; identifiers redacted). "Dacota

has expressed his sorrow for Mark's death and his part in it, and also how

Mark's death changed his own life." *Id*, page 1. Ms. Allen and Mark's

family support Dacota's early release. *Id,* pp 1 and 2.

That is extraordinary. And compelling.

## B.   The '3553(a) Factors' Favor Sentence Reduction

The "extraordinary and compelling reasons" set out above support

sentence reduction. The next step is to apply the relevant 18 U.S.C. §

3553(a) factors to explain why release is warranted. Reducing Mr. Rogers'

sentence is consistent with 18 U.S.C. § 3553(a) sentencing factors. See

*United States v. Greene*, 2021 WL 354446, at *16 (D.D.C. Feb. 2, 2021)

(once an inmate proves that "extraordinary and compelling reasons" exist

to modify a sentence, "the presumption then effectively shifts in favor of

release" (citing *United States v. Johnson*, 464 F.Supp.3d 22, 30-31 (D.D.C. 2020)); cf. 18 U.S.C. § 3582(c)(1)(A) (2020 rev. ed.) (explaining that a court should consider § 3553(a) factors before granting a sentencing modification request); see also 18 U.S.C. § 3553(a)(providing federal sentencing factors, cabined by the parsimony clause – the sentence should be sufficient, but not greater than necessary – to achieve listed goals):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> (3) the kinds of sentences available;
> (4) the sentencing guideline ranges;
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and
> (7) the need to provide restitution to the victims of the offense.

## 1.   Nature and circumstances of the offense

As relevant here the defendant's "offense of conviction" is distribution of drugs, not distribution of drugs resulting in death. The acts described in PSR ¶¶ 8 through 12, while accurate in relating matters associated with Fentanyl distribution, do not focus on the offense of conviction. See also, Part II.A, Facts. This was an affable but misguided

exchange not a sophisticated, upper echelon drug sale.

## 2.   History and characteristics of the defendant

Mr. Rogers' father died when he was an infant, and he was raised by a single mother who herself used drugs. Seeing his mother use marijuana gave Mr. Rogers the perception that the drug was harmless, so he began to use it at the age of 14. Soon he began using other substances, and eventually was convicted of a felony drug offense, placed on probation, and forced to quit using marijuana due to mandated drug screening. At only 18, he was an addict. He turned to other substances, including fentanyl.

Fentanyl is the strongest prescription painkiller available. Dacota soon found that he needed more and more of it. More than his meager earnings from Pork Chop Johns could provide, he began brokering deals to receive the drug for in exchange for connecting buyers and sellers. He did not make a lot of money; he lived within his means. See PSR ¶¶ 55-59. His drug addiction was his motivation. Family, friends, and employment became the means to subsidize addiction.

His mother died Christmas eve of 2015. That death, along with Mr. Allen's, motivated Mr. Rogers' to endeavor to end his addiction. Two

families suffered an incredible amount of pain because of his actions – the Allen family with the loss of Mark and the Rogers family with Dacota's long prison term.

The child that Mr. Rogers was at age 20 when first incarcerated is nothing like the man that he is today at 30. He seeks the chance to prove it. He realizes that family, friends, employment and dedication to sobriety are all that matters. Everything he's learned, everything he's done, has been so when he is afforded the opportunity to live free he will find success and fulfillment.

### 3. Reflect the seriousness of the offense, promote respect for the law, and provide just punishment

Mr. Rogers acknowledges the seriousness of the offense. With the benefit of modern scientific understanding and with genuine appreciation for rehabilitation, the changes in the law, and other factors discussed herein, it is clear that the time Mr. Rogers has already served sufficient custodial punishment for distributing fentanyl in December 2012. Time served accomplishes the purposes of criminal sentencing. His actions over these past many years show he has a respect for the law he did not have in 2013, and, more importantly, a deep and abiding respect for those he

24

harmed by his offense.

### 4.   Sentences available

As indicated *supra*, the sentencing landscape has changed dramatically. See Part II(B), above. See also *United States v. Vigneau*, 473 F. Supp. 3d 31, 36–37, 39 (D.R.I. 2020) (hard to reconcile lengthy sentence with modern sentencing regimes and statistics, especially with an ever-increasing body of research that questions effectiveness of imprisonment for a period greater than reasonably necessary).

### 5.   Policy statement

There is no policy statement that applies to defendant-filed § 3582(c)(1)(A)(i) motions. *Aruda, supra*. According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit clarified: "[t]his dangerousness finding is not statutorily required under 18 U.S.C. §3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *Aruda*, 993 F.3d 797, 799 (9th Cir. 2021). There is no evidence he is a

present danger. In fact, the contrary is true. See Exhibits C, D, E, and F.

### 6.  The need to avoid unwarranted disparity

The Bureau of Prisons website lists Mr. Rogers' release date as September 21, 2029. Not accounting for 'good time,' he has served more than 110 months (just shy of 50%) of his 224-month sentence. As discussed at length above (see Part III(A)(2)), the disparity here arises from an *unusually long* sentence imposed in 2014, now inapplicable dur to statutory and case law changes. Preventing incongruity from growing ever wider is an appropriate § 3553(a) consideration.

### 7.   The need to provide restitution

Monetary payments have been made in accord with the Inmate Financial Responsibility system. Mr. Rogers paid the special assessment completely, and he has made restitution payments at $25 per quarter since June 2014 through September 2022; $30 a month since then. Mr. Rogers will be able to pay at a higher rate when released and employed.

### 8.   Protect the public and deter criminal behavior

A sentence of time-served is "sufficient but not greater than necessary" to serve deterrence purposes. 18 U.S.C. § 3553(a). Mr. Rogers'

consistent non-violent behavior over the vast majority of his time in BOP custody is persuasive in judging his present danger and to protect the public. Supervision by U.S. Probation, will ensure that granting his request would not unduly endanger the community and will deter illegal conduct.

Mr. Rogers has expressed remorse for his actions. At 30 years of age the his risk of recidivism is low compared to when jailed nearly a decade ago. He has had no significant disciplinary infractions since 2017. He has worked his way to a lower security classification despite an extremely high Bureau of Prisons custody level at the outset. He undertook significant rehabilitation efforts (see e.g., Exhibit F) even before the First Step Act incentivized doing so.

Though rehabilitation alone may prove insufficient to warrant a sentence reduction, Docota's efforts and accomplishments magnify other factors supporting release. He has completed numerous programs, including post graduate studies. See Exhibit F. He has a full-time job awaiting him with the family business. Exhibit E, Affidavit of Richard Garrett. Along with employment, he has a solid network of family and

friends ready to help him succeed upon release. *Id.* He has voiced the added desire to take on responsibility for caring for his aging grandparents.

Time already served in prison meets sentencing goals. The Supreme Court's opinion in *Pepper v. United States*, provides an excellent format for relating post-offense rehabilitation to § 3553(a) factors. 562 U.S. 476, 490-93 (2011). Post-sentence rehabilitation gives the Court the most up to date view of Dacota's character. Cf. *Id.* at 492. The evidence shows a man who matured in confinement. He has thought seriously about the keys to a successful re-entry, and his family is fully prepared to support his return to society.

## IV.   Release Plan

Mr. Rogers has a solid release plan and very strong family ties. His little brother, Joey Atkins, lives in Salmon, Idaho, and is one impetus behind Mr. Rogers' steady efforts toward success. He wants nothing more than to get out of prison and teach Joey all he has learned about life and being a good man. He will encourage Joey to move to Helena, Montana, after his release to carry out that plan.

Mr. Rogers has family members eager to provide him the support he needs to reintegrate into society. Richard and Cheryl Garrett, Mr Rogers' grandparents, have a place for him to live, as well as a place for him to work at Capital Laundry, the family business. Rick and Renee Garrett, Dacota's aunt and uncle, are also close and will help with anything he could ask for. See Exhibit E, Affidavit of Richard Garrett.

## V.   Conclusion

Even in the eyes of those most aggrieved, Mark Allen's family, the custodial punishment Dacota Rogers served to date is sufficient. This Court should favorably view the changes, growth, and attributes shown by Mr. Rogers. As the Allen family says, early release from custody is warranted.

RESPECTFULLY SUBMITTED this 9th day of December 2022.

/s/ Anthony R. Gallagher
Attorney for Dacota Robert Rogers

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Local Rule 47.2(c) (as amended). The line spacing is double and proportionately spaced, with a 14-point font size. It contains less than 6,500 words according to the word count of the Corel WordPerfect© word-processing program used to prepare this brief. The total number of words is 5,482, excluding caption and certificates.

RESPECTFULLY SUBMITTED this 9th day of December 2022.

/s/ Anthony R. Gallagher

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM-ECF |
| 4 | Mail |
| 3 | E-Mail |

1. CLERK,
   U.S. DISTRICT COURT

2. TARA J. ELLIOTT
   Assistant U.S. Attorney
      Counsel for United States

3. U.S. Probation Office
      Great Falls

4. DACOTA R. ROGERS
      Defendant

/s/ Anthony R. Gallagher