**TARA J. ELLIOTT**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**101 E. Front Street, Suite 401**
**Missoula, MT 59802**
**P.O. Box 8329**
**Missoula, MT 59807**
**Phone:**       **(406) 542 8851**
**FAX:**          **(406) 542 1476**
**Email:**       **Tara.Elliott@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 13-15-BU-BMM** |
| **Plaintiff,** | |
| **vs.** | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |
| **DACOTA ROBERT ROGERS,** | |
| **Defendant.** | |

Rogers has filed a motion for release under 18 U.S.C. § 3582(c)(1)(A). Doc.

47. Rogers is currently serving a 224-month sentence for distribution of fentanyl,

in violation of 21 U.S.C. § 841(a)(1). Defendant's motion should be denied

because he has not provided "extraordinary and compelling" reasons justifying

1

release and his release would not be justified under the 18 U.S.C. § 3553(a)

factors.

## INTRODUCTION

Rogers appears to have exhausted his administrative remedies. *See* 18

U.S.C. § 3582(c)(1)(A) (2020 rev. ed.). He now files this third request for

compassionate release.

The compassionate release statute, 18 U.S.C. § 3582(c), as amended by the

First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not
> modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days from the receipt of
> such a request by the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment (and may impose a term of probation
> or supervised release with or without conditions that does not exceed the
> unserved portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are applicable, if it
> finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission . . . .

To begin with, the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is a

non-jurisdictional, mandatory claim processing rule that must be enforced when

invoked by the government.  See, *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020).

Further, the applicable policy statement appears at USSG §1B1.13 and it provides that the district court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  The Ninth Circuit has held that "the Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."  *United States v. Aruda*, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021).

In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)    Medical Condition of the Defendant.—

(i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is—

(I)   suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.—

(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with note 1(D), BOP promulgated Program Statement

5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf,

amended effective January 17, 2019, to set forth its evaluation criteria.

In general, the defendant has the burden to show circumstances meeting the

test for compassionate release. *United States v. Heromin,* 2019 WL 2411311, at *2

(M.D. Fla. June 7, 2019). As the terminology in the statute makes clear,

compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019

WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

On July 18, 2013, Rogers was indicted for distribution of fentanyl, in

violation of 21 U.S.C. § 841(a)(1), and distribution of fentanyl resulting in death,

in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c). Rogers distributed a fentanyl

patch to an individual who later died. PSR ¶ 8-12.

Rogers pleaded guilty to distribution of fentanyl which carried a maximum

punishment of twenty years' incarceration. The Government agreed to move to

dismiss the charge of distribution of fentanyl resulting in death which carried a

mandatory minimum punishment of twenty years of incarceration. Doc. 14.

Notably, the United States also agreed not to file an information under 21

U.S.C. § 851 based on Rogers' prior drug conviction.

On February 24, 2014, he was sentenced on count I to 224 months of

imprisonment, followed by three years of supervised release. Docs. 26 and 27.

## ARGUMENT

Any compassionate release decision—even for a statutorily eligible

defendant—must also consider the factors under 18 U.S.C. § 3553(a).  *See* 18

U.S.C. § 3582(c)(1)(A).  As such, any consideration of release now should be

balanced against the same 3553(a) factors – such as deterrence, just punishment,

respect for the law, and avoidance of disparity of sentencings – that were

considered at sentencing.

### A. Health and Safety

Although the COVID-19 pandemic is an extraordinary world event, Rogers

has failed to show that its impact on him, specifically, constitutes "extraordinary

and compelling reasons" warranting his immediate release pursuant to 18 U.S.C. §

3582(c)(1)(A). Rogers does not meet any of the listed reasons in USSG §1B1.13,

nor can he describe any particularized reason why he should be released apart from

any other convicted defendant serving time within the BOP.

Courts have generally recognized that "it is a rare case in which health

conditions present an 'exceptional reason'" to allow for release where detention

would otherwise be warranted.  See, e.g., *United States v. Wages*, 271 F. App'x

726, 728 (10th Cir. 2008) (collecting pre-trial detention cases). Despite the

COVID-19 pandemic, Roger's case is not one of those rare cases. Rogers received

treatment for his detached retina, but apparently suffers from blurry vision. Doc. 48

6

at 17.  Rogers has not demonstrated that his current facility is unequipped to provide appropriate medical treatment for his medical condition and has not therefore shown that release is necessary to protect his health.

### B. Exemplary Rehabilitation

While the United States recognizes and appreciates Rogers' seemingly well intentioned attempts at improving his life and those of others, even coupled with the concerns of Covid-19, his successes while incarcerated are not "exceptional" within the meaning of USSG §1B1.13. As is noted in the comments, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.*, comment. (n.3).

### C. Caregiving

Rogers appears to have ailing grandparents who indicate they need care. Doc. 48, Ex. E. The United States submits that while this is certainly a factor that this Court can consider, the facts before the Court here are not "extraordinary and compelling." In each of the cases cited by Rogers, the Defendant was released because they were the only caregiver available to their parent, not grandparents.

### D. Unique Circumstances / Term of Imprisonment

There is no doubt that Rogers was young when he committed this very serious offense. The Court at sentencing was aware of that fact and considered it under 18 U.S.C. § 3553(a) and still decided that a 224-month sentence was

appropriate. *See* SOR. Additionally, the Court was aware of the Victim Impact Statement submitted in this matter. PSR ¶ 19. *Id*.

Notably, the sentencing Court was fully aware of *Burrage v. United States*, 571 U.S. 204 (2014) and the same argument presented now was argued at the time of sentencing by Rogers' previous defense counsel. *See* Doc. 22.  Much like it was discussed then at sentencing, a postmortem examination of the victim's body performed by Dr. Gary Dale, a State Medical Examiner, concluded that the cause of the victim's death was fentanyl toxicity. Doc. 23, Ex. A1; PSR ¶ 12. There were no other contributing causes. *Id*. Rogers' conduct was the "but for" cause of Allen's death and the enhancement again debated would still apply today.

In Rogers' case, application of §2D1.1(a)(2) did not increase either a mandatory minimum or statutory maximum penalty. The Defendant's offense of conviction carried a statutory maximum sentence of 20 years imprisonment. 21 U.S.C. § 841(b)(1)(C). There is no mandatory minimum penalty. *Id*. Application of the 188 to 235 month imprisonment guideline range under §2D1.1(a)(2) did not increase the sentence beyond the statutory maximum penalty of 20 years (240 months). *Burrage* did not affect Rogers advisory guideline range nor does would it change it today.

Rogers also cites *Braxton v. United States*, 500 U.S. 344, 346-48 (1991), for the proposition that "more serious guidelines can be used only where defendant

stipulated to commission of more serious offense." Doc. 48 at 10. His argument

takes *Braxton* out of context. Indeed, the government recommended that the Court

apply the "offense guideline *section* ... most applicable to the offense of

conviction." *Braxton*, 500 U.S. at 346 (citing § 1B1.2) (emphasis added). The PSR

correctly cited the offense guideline section of §2D1.1(a)(2) which is the

applicable guideline section for a conviction under 21 U.S.C. § 841(a)(1) and

(b)(1)(C). This is not a case where the government or the PSR recommended the

application of, for example, the homicide guideline sections under USSG §2A.

The Ninth Circuit has specifically rejected the extension of *Braxton* in the

way that Rogers again puts before this Court. *United States v. Pena-Carrillo*, 46

F.3d 879, 885 (9th Cir. 1995); *United States v. Arias-Granados*, 941 F.2d 996, 998

(9th Cir. 1991). Pena-Carrillo was convicted of illegal reentry after a prior felony

conviction. *Id*. The district court applied USSG §2L1.2, which was the applicable

guideline section for violations of 8 U.S.C. § 1326(b)(1). The Pena court affirmed

the sentence holding that, "[t]he fact that this [correct] guideline [section] takes

into consideration conduct that is also an element of a greater offense is

irrelevant." The court thus declined to extend *Braxton* in the way Rogers seeks to

do, and affirmed because the district court applied the correct guideline section. In

other words, *Braxton* does not apply to the individual guideline provisions—the

base offense level or specific offense characteristics—within the appropriately applied guideline section.

Additionally, for example, in *Arias-Granados*, the defendant pleaded guilty to illegal reentry under 8 U.S.C. § 1326(a) which did not encompass a prior felony conviction as an element of the crime with which the defendant was charged under 8 U.S.C. § 1326(b)(1). *Arias-Granados*, 941 F.2d at 998. The defendant argued that a key enhancing element of subsection USSG §2L1.2(b)(1) required the existence of a prior felony conviction, but that was not encompassed within the offense of conviction (reentry after deportation under 8 U.S.C. § 1326(a)), and thus the district court should not have considered his prior felony convictions in sentencing him. *Id*. In other words, he argued "that the district court could not look to any characteristics or conduct that was not an element of the crime of conviction." *Id*. The Ninth Circuit rejected his argument and held that, "[t]his position ignores the structure of the Guidelines." *Id*.

Indeed, the Ninth Circuit held that the "district court was required by the clear language of the guidelines to consider the prior [felony] convictions in calculating appellant's sentence[]." *Id*. (citing USSG §§1B1.2(a), 1B1.2(b), 1B1.3(a)(4)). This is the same situation as Rogers, and like Arias-Granados' felony conviction which he did not admit to as his change of plea, the Court can and

should have considered the fact that Rogers' distribution of fentanyl resulted in the death of the victim when calculating the guidelines.

In sum, the correct guideline in this case was USSG §2D1.1(a)(2), which carried a base offense level of 38. PSR ¶ 18.

## CONCLUSION

The United States respectfully requests that the Defendant's motion for compassionate release be denied. A consideration of the 18 U.S.C. § 3553(a) factors shows that the defendant cannot meet the high burden for compassionate release.

DATED this 20th day of December, 2022.

JESSE A. LASLOVICH
United States Attorney

*/s/ Tara J. Elliott*
Assistant U.S. Attorney
Attorney for Plaintiff

11

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to D. Mont. LR 7.1(d)(2) and CR 12.1(e), the United States'
response to Defendant's motion for release is proportionately spaced, has a
typeface of 14 points or more, and has a body containing 2,197 words.

*/s/ Tara J. Elliott*
Assistant U.S. Attorney
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, a copy of the foregoing

document was served on the following persons by the following means:

      (1, 2)  CM/ECF
      ( )     Hand Delivery
      ( )     U.S. Mail
      ( )     Overnight Delivery Service
      ( )     Fax
      ( )     E-Mail

1.     Clerk, U.S. District Court

2.     Anthony R. Gallagher
       Attorney for Defendant

                              */s/ Tara J. Elliott*
                              Assistant U.S. Attorney
                              Attorney for Plaintiff