ANTHONY R. GALLAGHER
Attorney at Law
3501 12th Avenue South
Great Falls, MT 59405
anthonygallagherlaw@aol.com
Phone: (406) 799-2165
    Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DACOTA ROBERT ROGERS,<br><br>Defendant. | Case No. CR-13-15-BU-BMM<br><br>DEFENDANT'S REPLY TO GOVERNMENT RESPONSE TO MOTION TO REDUCE SENTENCE PURSUANT TO 18 USC §3582(c)(1)(A)(i) |

I.    Information to be assessed in a § 3582(c)(l)(A)(i) Motion

The Government concedes Mr. Rogers "appears to have exhausted his administrative remedies." Government Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Doc. 50 (hereafter 'Response'), p. 2. When assessing Mr. Rogers' claims, the Response refers to controlling precedent, *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), but then quotes extensively from USSG §1.B1.13

1

policy statement saying it informs a district court's discretion in determining what constitutes "extraordinary and compelling" circumstances. Response, pp. 3-4. The Government falls short. Citing *Aruda*, this Court recently held "the substantive standards for what qualify as extraordinary and compelling *expand beyond* the bounds of guidance provided in USSG § 1B1.13's Policy Statement's Application Notes." *United States v. Lapp*, No. CR 10-09-H-BMM (D. Mont. Aug. 3, 2022), pp. 4-5. (Emphasis added).

Under *Aruda*, a sentencing court may reduce the sentence even when § 1B1.13 cmt. n. l. criteria are not met. *United States v. Duval*, No. CR 01-062-BLG-SPW (Doc. 265, D. Mont. Dec. 9, 2022), p. 4, n. 2. "It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Concepcion v. United States*, 562 U. S. 476, 142 S.Ct. 2389, 2396 (2022). The Court may define and find what is extraordinary and compelling, then lower a sentence, provided it considers such a reduction in accord with the factors enumerated in § 3553(a).

Section 603(b) of the First Step Act ("FSA") is entitled "Increasing the Use and Transparency of Compassionate Release." That language expresses congressional intent to "liberalize the use of compassionate release, and to accomplish that purpose courts cannot be limited to the same restrictive list that previously limited the BOP." *United States v. Carroll*, No. 4:98-cr-351, 2020 WL 8024485, at *5 (E.D. Mo. Sept. 14, 2020). Entirely consistent with the FSA, matters not in the list in USSG §1.B1.13 may be considered in order to carry out the Congressional intent to "increase the use" of sentence reductions under § 3582.

## II. Extraordinary Reasons for Sentence Reduction

The length of sentence, rehabilitation, strong family support, youth at the time of the offense, need to assist aging grandparents, and the Allen family's support, along with his other reasons, establish extraordinary and compelling circumstances. Addressing points raised in or omitted from the Government's Response, the following is offered in Reply:

### 1. Length of Sentence

The United States says "[t]he Ninth Circuit has specifically rejected the extension of *Braxton* in the way that Rogers again puts before this

Court." (Response, page 7). In doing so, it likens Mr. Rogers' argument related to application of USSG §2D1.1(a)(2) with cases involving illegal reentry after conviction of a felony. *Id.* The Response does not address persuasive authority discussed by Mr. Rogers which held that the guideline for distribution resulting in death only applies when the death is clearly part of the crime of conviction and rests on facts confirmed by guilty plea or jury verdict. See Defendant's Memorandum. (Doc. 48, p. 11).

The reality is that the plea agreement (Doc. 15) calling for a plea to the first count of the indictment (distribution of fentanyl) was necessary to avoid exposure to a life sentence and/or the mandatory minimum if convicted at trial on the second count. The United States agreed "not to file an information under 21 U.S.C. §§ 841(a)(1) and 851 subjecting the Defendant to an enhanced statutory penalty on the basis of the Defendant's prior conviction for a felony drug offense." (Doc. 15, p. 2). Charging decisions are often designed to drive a plea settlement that avoids trial challenges to facts underlying dismissed counts because of the client's risk of exposure to a greater term of imprisonment. Defense counsel are ethically bound to broker an agreement that has the *potential*

4

of providing a result that is fair and just. The agreement here contemplated just that, but the imposed sentence was based on facts related to a count that was not adjudicated at trial nor facts agreed to by Mr. Rogers as part of the agreement or in the plea colloquy.

2. Rehabilitation

Congress' use of the modifier "alone" in 28 U.S.C. § 994(t) signifies that rehabilitation in tandem with other factors justifies reduction. The nearly ten years Mr. Rogers has served have been transformative. As the filings in support of his motion for reduction establish (Doc. 48, pp. 11-20 and related exhibits), he demonstrates remarkable rehabilitation and remorse. People can and do change. Dacota has.

In the Response, the United States acknowledges "seemingly well intentioned attempts at improving his life and those of others, . . . coupled with the concerns of Covid-19." It then posits that those exemplary efforts do not meet the extraordinary and compelling standard. (Response, p. 7). Accomplishments such as those present in this case are not only extraordinary and compelling, but obviously are relevant considerations which support granting of relief.

5

In the first instance, the Government has ignored the legal precedent in the initial moving papers. In each case, the court found a combination of extraordinary and compelling reasons similar to those raised by Mr. Rogers, including rehabilitation, warranted reduction. Secondly, rehabilitation is one of the congressionally enumerated goals of criminal sentencing, and a young man's slow but steady development of self-control make rehabilitation and successful reintegration into society more likely than for similarly situated offenders. Even Congress has "recogniz[ed] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

Research from the Alliance for Safety and Justice shows 60% of crime victims prefer criminal justice approaches that prioritize rehabilitation over punishment. See Crime Survivors Speak 2022: National Survey of Victims' Views on Safety and Justice, https://alliance forsafetyandjustice.org/wp-content/uploads/2022/09/Alliance-for-Safety-and-Justice-Crime-Survivors-Speak-September-2022.pdf at page 23. As embodied in the Allen Family's support for Dacota Rogers' release, crime victims as a whole strongly prefer investments in crime prevention and

6

treatment to spending on more time in jail, with 85% of those surveyed preferring more investments in education than in building more prisons with nearly 90% preferring investments in employment over investments in prisons.

### 3. Youth at the Time of the Crime

The Government says "[t]here is no doubt that Rogers was young when he committed this very serious offense." Response, p. 7. Though the sentencing court may have known that fact in 2014, youth at the time of the offense and difficult upbringing are extraordinary and compelling reasons for sentence reduction in 2022. In addition to factors submitted in support of his Motion (see Memorandum at Doc. 48 and related Exhibits), "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." *Roper v. Simmons*, 543 U.S. 551, 561, 125 S.Ct. 1183, (2005) (quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658 (1993) (internal quotation marks and citation omitted).

4. **Family Support and Caregiving**

The Government agrees the need to assist his grandparents "is certainly a factor that this Court can consider." See Response, p. 7. Status as grandparents (and not his children or parents) does not diminish Mr. Rogers' role as potential caregiver. Granting early release from custody now so Dacota can live with and be the primary caretaker to his aging and ailing grandparents is appropriate.

5. **Unique Circumstances**

The Response fails to discuss one striking and certainly uncommon factor: the deceased's family concurs that Dacota has spent enough time in prison and urges release. Discounting the disputed PSR guideline reference, the offense of conviction was nonviolent. He has served about 50% of his overlong 18½ year prison term. Without reiterating Mark Allen's mother's poignant comments (Exhibit D, Doc. 48.4), time served is sufficient but not greater than necessary to effectuate sentencing goals.

6. **Health and Safety**

Courts around the country have been mindful of the risks that the pandemic poses to incarcerated individuals. It has become widely

recognized that "[p]risons are tinder boxes for infectious disease." *United States v. Jeremy Rodriguez*, No. 03 Cr. 271 (AB), Doc. 135 (E.D. Pa. Apr. 1, 2020). This unprecedented global health crisis adds an impenetrable calculus. It is not just that the disease has tipped scales that were already difficult to balance, but even as courts have grappled with the virus' impact on those in custody, the nature of the pandemic, with all its variants, has been maddeningly adaptable and unpredictable.

The reality of COVID-19 adds fear, stress and risk to every day Dacota Rogers remains in custody — for himself and his family. His punishment has taken on an ancillary, unforeseeable component. A reduction in sentence "comports with dictates of fundamental justice and recognizes that compassion need not be exiled from the province of judging." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 213, 109 S. Ct. 998, 1012 (1989) (Blackmun, J. dissenting).

### III. Sentence Reduction is Consistent with § 3553(a) Factors

Dacota Rogers' circumstances mirror the kinds of factors courts have already made clear constitute extraordinary and compelling circumstances warranting sentence reduction. Next, relief pursuant to 18 U.S.C. §

9

3582(c)(1)(A) must be consistent with 18 U.S.C. § 3553(a) factors.

As part of the § 3553(a) analysis, a court considers post-offense conduct, including rehabilitation while in custody. See *Pepper v. United States*, 562 U.S. 476, 491 (2011) (In the context of a re-sentencing, under § 3553(a), "postsentencing conduct . . . sheds light on the likelihood that [the imprisoned person] will engage in future criminal conduct"). Although Mr. Rogers' custodial behavior is undeniably praiseworthy, post-sentencing conduct need not be "extraordinary" or "exceptional" to support release. See *United States v. Holmes*, No. 02-cr-024 (BAH), Mem. Op. at 17-18, ECF No. 147 (D.D.C. Apr. 16, 2021). Dacota Rogers satisfies the objectives of § 3553(a)(2)(D) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment."

The steps Mr. Rogers has taken toward self-reflection and self-improvement paint an accurate picture of the man he is today. He has already served a lengthy sentence – one which is more than necessary to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). His lowered

security classification (Exhibit F) makes clear that imprisonment already served properly affords both general and specific deterrence. 18 U.S.C. § 3553(a)(1) & (2).

Impressive rehabilitation efforts are relevant to "the history and characteristics of the defendant" under § 3553(a)(1), as well as to the to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2) — in particular, to "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." § 3553(a)(2)(B) and (C). As expressed through his actions, he recognizes the problems that led to his crimes and signals a sincere desire to address those problems to ensure that he remains law abiding in the future. Dacota Rogers has a strong foundation upon which to build a successful life after he is released from prison.

The need for "just punishment" corresponds to the moral culpability of an offense. Immaturity, susceptibility to peer influence, and dependence mean "irresponsible conduct is not as morally reprehensible as that of an adult." As a consequence, judges should consider that youthful "character deficiencies will be reformed." *Graham v. Florida*, 560 U.S. 48, 68, 130

S.Ct. 2011 (internal quotation marks omitted). *Roper*, 543 U.S. at 570, 125 S.Ct. 1183 (internal quotation marks omitted). Thus, a "just punishment" for a young offender with a modest criminal background like Dacota Rogers should be less severe than a "just punishment" for a similarly situated adult with a long criminal record. Dacota was a young man whose judgment was further clouded by addiction to an incredibly powerful drug.

The Response (Doc. 50, p. 3) says that under USSG § 1B1.13, a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided by 18 U.S.C. § 3142(g)" before ordering a reduced sentence. But, as this Court recognized, "*Aruda* concluded that the Policy Statement at USSG § 1B1.13 [is] wholly inapplicable to § 3582(c)(1)(A) motions filed by defendants." *United States v. Turner*, No. CR-04-172 (Doc. 125 at 14)(D. Mont. June 17, 2021) (citing, *Aruda*, 993 F.3d at 802). Therefore, a § 3582(c)(1)(A) motion "no longer 'must' consider whether a defendant poses a danger to the community when deciding" whether to grant relief. *Turner*, pp. 14-15 (citing *United States v. Castillo*, 2021 WL 1985028 at \*5 (D.C. Cal. May 14, 2021). See also *United States v. Lapp*, No. CR 10-09-H-BMM (D. Mont. Aug. 3, 2022).

Although it is not bound to consider dangerousness, when viewed in light of his modest criminal background (PSR ¶ 28-33 show he has one felony conviction), Dacota's "history and characteristics in the past decade indicate that he poses little threat to the community if released." *Turner*, p. 16. Even considering the factors enumerated in § 3142(g), his motion for reduction of sentence should be granted.

## IV. Conclusion

Given the changes wrought by the First Step Act, district judges throughout the country have found that they may consider any "extraordinary and compelling" reasons raised by defendants. Mr. Rogers was never a large-scale drug trafficker, but his original sentence treated him as one. Institutional history including rehabilitation, empathy for and reconciliation with the Allen family, show he has matured. When considered in concert with the undeniable threat of COVID-19, extraordinary and compelling reasons warrant reduction in sentence.

People are committed to assisting Dacota with all aspects of his reentry. He can be a productive member of society. He has a job and a place to live on his release. He will be subject to a period of supervised

release which will guide him in his transition and mitigates whatever risk there may be in reducing sentence to time served.

RESPECTFULLY SUBMITTED this 26th day of December 2022.

/s/ Anthony R. Gallagher<br>Attorney for Dacota Robert Rogers

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Reply Brief is in compliance with Local Rule 47.2(c) (as amended). The line spacing is double and proportionately spaced, with a 14-point font size. It contains less than 3,250 words according to the word count of the Corel WordPerfect© word-processing program used to prepare this brief. The total number of words is 2,388, excluding caption and certificates.

RESPECTFULLY SUBMITTED this 26th day of December 2022.

/s/ Anthony R. Gallagher<br>Attorney for Dacota Robert Rogers

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2022, a copy of the foregoing document was served on the following persons by the following means:

 1, 2     CM-ECF
   3      Mail

1. CLERK,  
   U.S. DISTRICT COURT

2. TARA J. ELLIOTT  
   Assistant U.S. Attorney  
      Counsel for United States

3. DACOTA R. ROGERS  
      Defendant

/s/ Anthony R. Gallagher