# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>v.<br><br>DACOTA ROBERT ROGERS,<br><br>              Defendant. | **CR-13-15-BU-BMM**<br><br><br>**ORDER** |

## BACKGROUND

Dacota Robert Rogers ("Rogers") moves the Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 47.) Rogers is serving a sentence of 224 months for distribution of fentanyl. (Doc. 27.) The underlying offense involved the accidental death of Rogers's roommate, Mark Allen ("Mark"), from a fentanyl overdose. Rogers has served more than 110 months of his sentence. Rogers's scheduled release date is September 21, 2029. *See* Inmate Locator, www.bop.gov/inmateloc (last visited January 6, 2023). Rogers is currently incarcerated at FCI Victorville Medium II in Victorville, California. *Id.*

### I.     Availability of Relief Under 18 U.S.C. § 3582.

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The First Step Act amendments to 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 3582(c)(1)(A) prove especially relevant to Rogers's motion.

Where, as here, a motion for a sentence reduction is well taken, a court may modify a term of imprisonment following a finding that "extraordinary and compelling reasons warrant such a reduction." *Id.* When deciding whether to reduce a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a) ("§ 3553(a)"), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)–(2).

Congress has not defined those circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the Sentencing Commission to issue a policy statement in which it describes "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448.

The relevant Sentencing Commission policy statement lies in USSG § 1B1.13, titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)

("Policy Statement"). Notably, the Sentencing Commission has not amended the Policy Statement since passage of the First Step Act. *See United States v. Haynes*, 456 F. Supp. 3d 496, 507 (E.D.N.Y. 2020); *Brown*, 411 F. Supp. 3d at 448. A number of district courts have noted the unlikelihood of the Sentencing Commission updating the Policy Statement in the foreseeable future, as the Sentencing Commission requires four voting Commissioners to adopt a proposed amendment, and currently has only two voting Commissioners. *See, e.g., Haynes*, 456 F. Supp. 3d at 510 n.20; *Brown*, 411 F. Supp. 3d at 449 n.1; *United States v. Cantu*, 423 F. Supp. 3d 345, 347–48 n.1 (S.D. Tex. 2019); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *1 n.3 (D. Utah Feb. 18, 2020); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Handerhan*, No. 110-CR-00298, 2019 WL 1437903, at *1 n.4 (M.D. Pa. Apr. 1, 2019).

The "Commentary" to the Policy Statement lists five "Application Notes," the terms of which evidence the Policy Statement's inapplicability to the amended § 3582(c)(1)(A). *See* USSG § 1B1.13 n.1–5. Note 1 lists those circumstances that qualify as "extraordinary and compelling," including the defendant's medical condition, age, family circumstances, and "Other Reasons." *Id.* n.1(A)–(D). The "Other Reasons" subdivision to Note 1 provides as follows: "As determined by the Director of [BOP], there exists in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* n.1(D). Notes 4 and 5 likewise "speak plainly to the BOP's exclusive gate-keeping authority pre-[First Step Act]." *Haynes*, 456 F. Supp. 3d at 508. Note 4 provides, for example, that a "reduction under this policy statement may be granted *only* upon motion by the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)." USSG § 1B1.13 n.4 (emphasis added).

The pre-First Step Act Policy Statement does not account for amendments to § 3582(c)(1)(A), namely, removal of BOP's sentinel authority over sentence reduction petitions and extension to defendants of the right directly to move for a sentence reduction. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Policy Statement instead contemplates only motions filed by the BOP Director. *Id.*; *see also* USSG § 1B1.13.

When the First Step Act's amendments of § 3582(c)(1)(A) became effective, a split in authority emerged over whether the Policy Statement at USSG § 1B1.13 remained "applicable" to § 3582(c)(1)(A) motions directly filed by defendants. *See Beck*, 425 F. Supp. 3d at 579 (quoting § 3582(c)(1)(A)(i)'s requirement that a court's sentencing reduction must be "consistent" with any "applicable" policy statements); *Cantu*, 423 F. Supp. 3d at 351 ("Given the changes to [§ 3582(c)(1)(A)], the policy-statement provision that was previously applicable . . . no longer fits . . . and thus does not comply with the congressional mandate that the policy statement must

4

provide guidance on the appropriate use of sentence-modification provisions under § 3582."); *Haynes*, 456 F. Supp. 3d at 511–13 (citing "at least twelve" other federal district courts that have held the Policy Statement's "extraordinary and compelling reasons" list to be unexhaustive for defendants' direct sentence reduction motions).

The Ninth Circuit subsequently issued its decision in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). *Aruda* makes clear that the Policy Statement at USSG § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." 993 F.3d at 801. Where a court considers a sentence reduction motion directly filed by a defendant under the First Step Act, the substantive standards for what may qualify as extraordinary and compelling expand beyond the bounds of guidance provided in USSG § 1B1.13's Policy Statement Application Notes. *Id.* at 802; *see also Haynes*, 456 F. Supp. 3d at 511–13; *Cantu*, 423 F. Supp. 3d at 350–52; *Beck*, 425 F. Supp. 3d at 578–80 (M.D.N.C. 2019); *Brown*, 411 F. Supp. 3d at 451.

Although the Policy Statement may provide helpful guidance, *see United States v. Booker*, 543 U.S. 220, 245 (2005), "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020). The Court will look to additional considerations outside those listed in the Policy Statement to

5

determine whether extraordinary and compelling circumstances compel a reduction in Rogers's sentence.

## II.    Whether Rogers has Demonstrated Extraordinary and Compelling Reasons.

Despite this Court's determination that it has discretion to provide relief, Rogers still must demonstrate that extraordinary and compelling reasons support release or a reduction of his sentence. *Maumau*, 2020 WL 806121, at *5. Rogers urges the Court to release him on the basis of an excessive sentence. Rogers asserts that his original sentence reflected an improper calculation of the applicable guideline sentencing range. (Doc. 48 at 8–12.) Rogers argues that the appropriate sentencing range would have been 12 to 18 months, even without considering the applicable offense level reductions for acceptance of responsibility. (*Id.* at 12.) Rogers also cites in support of his motion his lack of a significant disciplinary record in prison and his completion of extensive educational and treatment programming while incarcerated. (*Id.* at 15–17.)

Rogers further points to his youth at the time of the offense and the unique circumstances of the offense and his relationship to Mark's family during his incarceration. (*Id.* at 13–14; 19–21.) Mark's family supports Rogers's early release. (*Id.* at 21; Doc. 48-4 at 1–2.) Rogers also seeks release to act as a caregiver for his grandparents. (Doc. 48 at 14–15; Doc. 48-5.) Rogers finally notes health concerns relating to the ongoing COVID-19 pandemic. (*Id.* at 17–19.)

The Government opposes Rogers's motion for compassionate relief. (Doc. 50.) The Government maintains that Rogers's sentence of 224 months proved appropriate and reflected the correct guidelines range. (*Id.* at 7–8.) The Government argues that neither Rogers's rehabilitation, COVID-19 health concerns, nor his grandparents' care-related needs amounts to extraordinary and compelling reasons for a sentence reduction. (*Id.* at 6–7.)

The Court determines that extraordinary and compelling reasons exist to grant Rogers's motion for compassionate release. Due to the extraordinary and compelling reasons presented by Rogers's age at the time of the offense, evidence of commitment to his education and personal growth while incarcerated, relationship with the victim's family, strong family support, and sentencing disparity considerations, the Court will grant Rogers's motion for compassionate release.

Reducing Rogers's sentence to effectively a time-served sentence comports with the § 3553(a) sentencing factors. Rogers was a criminal history category two. (Doc. 35 at 10; 35-1 at 18–19.) Rogers's total offense level was calculated to be 35. (Doc. 35 at 10.) Rogers's total offense level likely should have been calculated to be in the range of 9 to 12 based on the offense to which Rogers pled guilty. (*Id.* at 18.) Rogers has served over 110 months of his sentence. The time Rogers has served reflects the seriousness of his offense, promotes respect for the law, and fulfills the need for "just punishment." § 3553(a)(1), (a)(2)(A).

Gail Allen ("Ms. Allen") wrote in a victim statement submitted before Rogers's sentencing that she and her family "don't harbor hard feelings toward Da[c]ota Rogers." (Doc. 35 at 6.) The victim impact statement stated that Mark's family hoped that "he is able to do something with his life;" emphasized that "[Rogers] is so young;" and affirmed that "[w]e do forgive him and pray for him and his family." (*Id.*)

"[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider." *Pepper v. United States*, 562 U.S. 476, 490 (2011). Rogers has acknowledged the seriousness of his offense. (Doc. 48 at 24.) Ms. Allen has submitted a remarkable letter that details her support for Rogers's release. (Doc. 48-4.) Ms. Allen explains that she first wrote to Rogers in 2014. (*Id.* at 2.) Rogers and Ms. Allen since then have written to each other four to five letters a year, building in the process a relationship based on forgiveness and reconciliation. (*Id.* at 2–3.)

Ms. Allen states that Rogers "has expressed his sorrow for Mark's death and his part in it, and also how Mark's death changed his own life." (*Id.* at 2.) Ms. Allen writes that she and Rogers have "forged a friendship that allows us to go beyond my son's death and genuinely care about each other." (*Id.* at 3.) Ms. Allen confirms that her husband and other children "are supportive of an earlier release." Ms. Allen

states that she believes that Rogers "truly desires to live a responsible life and would have good things to contribute to society." (*Id.*)

Rogers's conduct while incarcerated provides further evidence that a reduced sentence proves appropriate. Rogers has accumulated no significant disciplinary infractions in prison in the last 5 years. (*Id.* at 27.) Rogers has excelled academically while incarcerated. Rogers completed his GED in 2014. (Doc. 48-6.) He earned an associate's degree in Science and Math in 2018. (*Id.* at 11.) Rogers has continued to work toward a B.S. in Business Administration from California Coast University. (*Id.* at 3–10.) Rogers also has enrolled in numerous creative and artistic courses, including in watercolors, sound engineering, music theory, creative writing. (*Id.* at 2.)

Rogers's pursuit of educational and treatment programming while serving his sentence addresses the needs to "protect the public" and to "provide the defendant with needed education or vocational training" and "other correctional treatment." § 3553(a)(2)(C), (a)(2)(D). These considerations, in combination with the extraordinary relationship Rogers has built with members of the victim's family, Rogers's young age at the time of the offense, and the likelihood that the applicable guideline level for imprisonment should have been in the range of 6 to 18 months rather than 188 to 235 months, all militate in favor of a reduced sentence.

The Court has granted, in part, other compassionate release requests where a defendant has prior felony drug offenses and has pled guilty to drug conspiracy, distribution, and/or possession offenses. *See, e.g.*, *United States v. Romero*, 4:12-cr-51-BMM, Doc. 240 (sentence reduced by 55 months to a total of 188 months); *United States v. Pratt*, 4:12-cr-82-BMM, Doc. 325 (sentence reduced by 15 months to a total of 145 months).

Rogers has a robust release plan in place. His grandparents have a place for Rogers to live. (Doc. 48-5 at 2.) Rogers has a job waiting at the family laundry business. (*Id.*) Rogers also will benefit from the support of his aunt, uncle, and brother. (Doc. 48 at 28–29; Doc. 48-5 at 3.) The Court, in recognition of the fact that Rogers "truly desires to live a responsible life and would have good things to contribute to society," will grant Rogers's motion. (Doc. 48-4 at 3.)

## ORDER

Accordingly, **IT IS ORDERED:**

1. Rogers's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**.

2. Pursuant to the original judgment and 18 USC 3582 (1)(A), the total term of supervised release shall be 3 years.

3. This Order is STAYED for up to 60 days.

4. The U.S. Probation Office must verify Rogers's residence and establish a release plan with an initial placement in a prerelease center for at least 3 months. Rogers shall be released directly from custody to the Great Falls

Pre-Release Center or other approved facility in the District of Montana. Appropriate travel arrangements also must be made.

5.  Rogers shall be released on the earlier of the following dates:

    a.  When the U.S. Probation Office is satisfied the requirements of paragraph four have been met; or

    b.  Seventy (70) days from the date of this order.

6.  If more than 60 days are needed to accomplish Rogers's release, the United States must notify the Court and demonstrate cause why the stay of this order should be extended.

7.  The U.S. Probation Office shall review Rogers's conditions of supervised release. If modifications are needed, the Probation Office should notify the counsel for both parties.

8.  Rogers must provide the Court with the complete address where he will reside upon release.

    DATED this 6th day of January, 2023.


    _____
    Brian Morris, Chief District Judge
    United States District Court